court is now in session. Good morning. The second case on our docket is 19-60606. It's Sue Quinn Pan v. Garland. And this argument is being conducted virtually and streamed online. Miss Kennedy? Yes, Your Honor. You're up. Oh, okay. Thank you. All right. May I begin? Sure. Thank you. All right. May it please the court. My name is Anne Kennedy, and I represent the petitioner, Miss Pan Sue Quinn. And first, I would like to thank the panel for giving us oral argument on this case. This is an immigration case that presents key issues of constitutional substantive due process. It's also a very personal one because my client, Miss Pan Sue Quinn, was ordered summarily deported without an evidentiary hearing when I was out on maternity leave. The first let me ask, when did when did your client or one of her counsel request an I-751 review? Your Honor, that is in the administrative record on the day that it was there, the charge was denied. So the there is no special application that is filed for an I-751. Bianca Santorini ended up representing, whose competent counsel ended up representing. And if the court sees, I believe, on page 140 of the administrative record, the court will see the handwritten notes from the immigration judge, where she had knowledge that an I-751 had been denied by USCIS, and that the charge of was denied. And so once that charge was denied, it triggers the affirmative duty that is on the immigration judge to develop the facts of the case. That's found in Section 240 of the Immigration Nationality Act, codified at 8 USC 1229AB1, that places a duty on an immigration judge to examine witnesses to listen to evidence to develop the factual specifics of the case. And so that didn't happen here, when honestly, it should have. And so while I have prevented, while we have presented six issues to the court that affect due process, they really all relate to the fact that Ms. Pansuquin was not given an evidentiary hearing when she was entitled to one and when there was an affirmative duty on the immigration judge to Well, if you get a hearing, what evidence will you intend to present to the court that would show that you would be entitled to release? What would the evidence be? The evidence would be the testimony from Pansuquin herself, and also documentary evidence. If the court notes the case matter of Herrera del Orden from the BIA, at a 751 renewal, you're not confined to the record that was presented to jurisdiction between USCIS and EOIR is I guess they use the word coterminous, but it's essentially concurrent. And so we would have had the opportunity in accordance with the practice manual for immigration court to file any supplementary documents 30 days ahead of a hearing on the merits. But you say documentation, what explicit documents are you Okay, so the documents would have been again, the testimony from Ms. Quinn herself, but also the documents showing that she entered into the marriage in good faith. Under I-751, or I guess on an I-751 application, there are two waivers that waive the requirement for a joint petition. And that's what happened here. I mean, this woman entered into a marriage, she came to the United States, she married in good faith, and essentially she was abandoned. You know, that's me. What evidence would show good faith? That's what I'm asking you. Her testimony would show good faith, and then also the evidence of courtship between them. Some of that is in the USCIS record as well. And so that's what we would have anticipated being able to present to the court. FOIA, I guess at the time that this happened, there was a FOIA request that was pending to try and get a copy of the USCIS record. But that is what would have been able to be presented to the courts. And again, if nothing else, I mean, to allow Ms. Quinn to argue her case as to why she entered the marriage on good faith. What would her testimony be? Did you get that document? I'm sorry, Judge. So in response to Judge Clement, I have not received the FOIA response on this file. So I do not have that here today. I mean, it's certainly not a part of the Fifth Circuit record. But we do have her affidavit. There is in the record here. Also, she had a 42B application that was inadvertently not filed. And there was a good faith misunderstanding as to whether the application was actually due to be filed or just identified as a basis of relief. In reviewing the record, you know, I very much in all candor for the court do see where the immigration judge said pleadings and applications, but we really registered pleadings and then identifying relief. But either way, within three days, I mean, that kind of brings to the second issue of substantive due process is, you know, when is it an error to not grant a motion to reopen when this woman was not given any kind of substantive hearing on the merits of her case? And so within three days of discovering what had happened, we filed the motion to reopen. I'm sorry, Judge? I have a question. What would her testimony be? What other evidence is there? Tell us what the evidence would show, whatever it is, about good faith and whatever else that she would put forth to say she's entitled to stay here. Okay, so her evidence would be to show evidence of good faith courtship, that this was not a sham marriage. There was no man, he came to China, they met in person. She is, you know, this is one of those kind of issues that she is not a citizen of Vietnam, she is a citizen of China. And, you know, one of the violations of due process in this case is that when she was summarily ordered to a country that she's not a citizen of. And so we would absolutely present evidence on that. But we would show evidence of courtship, evidence of her good faith intentions, evidence of her intentions to try and find him when she came to the United States. You're skipping around here. What was the evidence of the courtship? How she got here? Why did she have to try to find him? Where was she actually married? Can you give us some facts instead of conclusions? Yes, I apologize, Judge. These are things that the only process for me to obtain them really is through the FOIA request. What about your client? You said in her testimony, what would she say? Yes, and her affidavit is included in the record on appeal. But she would testify that she and her husband met while they were in China, they met over he came to visit her, they had a courtship online. He supported her like meaningfully, he basically induced her to leave her life in China and come to the United States. Her mother was in the United States. And so there was consideration there. And she did, in fact, come to the United States, relying on their marriage with the full intent to enter into a good faith marriage. She was not married. Where and when? She was married, Judge, I don't have the exact date, but she was admitted into the United States as a permanent resident. Because the marriage was less than two years, she was given a conditional resident status. So I believe they were married in China. But when she came to the United States, she was married and she entered as the immediate relative spouse of a US citizen. So she and she were together in China when they were married? Yes. Yes. Did they cohabitate in China? Yes. Well, I mean, yes, I believe the marriage was consummated. Yes, can I ask you something? I saw a reference in your brief, I think, to evidence such as family members statements and medical documents. Yes. Now, so my first question is, explain to me how this evidence relates to her good faith or not in entering into the marriage. So an I-751 is typically a jointly filed petition where both the US citizen petitioner and the alien spouse basically affirm the good faith of their marriage. Yes. Ms. Quinn was abandoned by her US citizen husband. And federal immigration law allows two exceptions to a jointly filed I-751. The first exception is if you have a good faith marriage that terminates. I actually think this marriage is never terminated. I don't think they could. Well, I understand what the regs say. And my question was about how the family member statements in the medical documents, which I read referred to in the brief, would support that. This goes to whether even if there was a due process violation, whether you can show substantial prejudice. So yes, Judge. So the second basis for a solely filed I-751 is if there's hardship or just an equity, a balancing factor that would justify allowing the alien to stay. In this case, it's not the extreme hardship that you would need for a waiver or inadmissibility. But in this case, it would be evidence, for example, of her own medical condition, evidence that she cares for her mother, evidence of the fact that her mother is an 88-year-old US citizen relative. And so all things taken together would justify allowing her to stay in the United States. Okay, so I think I hear what you're saying. I think the answer to my question is that the family member statements in the medical documents don't go to the good faith entering into the marriage, but instead go to something else, a different issue. Yes, it goes to the balance of equities, justifying her to file an I-751 on her own. Okay. So my second question is, in order to demonstrate substantial prejudice from a due process violation, if that's what happened here, do you have to point to be able to point to evidence in the record that demonstrates substantial prejudice? So the answer to your question is no. I believe that what I need to point to, Your Honor, is the affirmative duty and the affirmative rights, the affirmative right that the alien has to have a hearing, where she can present witnesses, she can present documents, and then also the duty that's on the immigration judge to allow that to happen. And so when those two things are violated, that really should satisfy. And then the fact that she is, in fact, deported to the wrong country shows prejudice. What's your best case for the proposition that if there's no hearing given, we can, I mean, you don't have to have evidence in the record that shows any kind of likelihood that you would be successful on the I-751 issue. Well, what's your best case for that? My best case for that, Judge, is the regulation that speaks to the requirements for a motion to reopen. But in this case, we do actually have evidence. I mean, we have her affidavit, we do have evidence of medical evidence that would, you know, that would justify the 751 solo. But the best, you know, example of that is what's the substantial prejudice? The woman who is a US citizen, the daughter of a US citizen, was ordered summarily deported. So that's, you know, I mean, that's that I would argue is prejudice per se. I mean, she's, you know, been ordered deported without her day in court as she's entitled to under US immigration law. Okay, so you agree that there needs to be some kind of substantial prejudice showing? Yes. Okay. Thanks. So, all right. So, so, you know, going back to this, I would say understand your argument, you're saying that, given putting her marriage aside, she's entitled entirely aside, she's entitled to hearing on whether the support she supplies to her mother entitles her to change his test or to stay here? Yes. So, irrespective of whether her marriage was in good faith, and she was admitted on that basis in the first place, you say that's by the boards, we don't even look at that. Is that your position? No, respectfully, Judge, I mean, there's always going to be a credibility that would go to discretion. But in this case, Ms. Quinn had two defenses to deportation. The first was a review of the I-751. She could have sustained that I-751 by showing either she entered the marriage in good faith, or there would be a balance of equities that would justify her to stay here in the United States. And there was never any, any suggestion, there's nowhere in the record, it was never, it was never intimated that she had a sham marriage, there was no fraud finding by USCIS. I mean, there was just the fact that she proceeded on the I-751 alone, and I guess didn't meet her burden per USCIS. And then immigration law allows, and in fact, what happened here was a referral of that decision over to the EOIR, at which point the immigration judge, especially once the charge of removability is denied, should have reexamined in an evidentiary capacity, that I-751 denial. The second basis that she had for relief was a 42B cancellation of removal application. And really, this case originated before PARIA and all of the, you know, disputes about the NTA, although the NTA in this case was fundamentally defective. But while that's not necessarily before the court, because it originated before, she had, Ms. Quinn had been in the United States for 10 years, she'd been a person of good moral character, and there were equities and hardships that would have justified the court canceling her removal on that motion to reopen regulation, you know, within three days, we had filed that 42B application. So should she have been, should the BIA done what it should have done and remanded this case back for an evidentiary hearing, you know, Ms. Quinn would have received her due process, and either she would have prevailed or not prevailed, but there was enough evidence in the record to that she had a good faith, meritorious defense. And that is what we are asking this court to basically articulate as the standard of what an alien is entitled to as a matter of due process. And, you know, one thing in this, your timer's expired, you saved time for Ms. Freyer. Good morning, Your Honors, and may it please the court, Alison Freyer for the Attorney General. In this case, Petitioner has not challenged the things she needs to challenge the board's reasoning, and her opening brief contains only unexhausted arguments, and therefore the agency's decisions should be undisturbed. First, with regard to waiver, Petitioner does not challenge that the board's denial of the timely post-order motion to reconsider was proper because she failed to identify an error of fact or law in the board's decision. Counsel, I don't mean to tell you how to do your presentation, but the panel was asking all about the I-751 issue. I mean, it'd be helpful to me if you pick up there, if you want to, because there are lots of issues here, and I want to make sure that we get to those. Sure. All of the evidence that Petitioner's counsel was describing, the testimony that she says her client would put on, the documents that she claims to have or hopes will be forthcoming from a FOIA request, all of that needs to be submitted to the agency before it can be considered by this court. Exhaustion is mandatory and jurisdictional. The statute requires this court to come back to cabin its review to the record the agency had when it was issuing its decisions, and it is precisely that failure to present any evidence to the IJ or the board, even with the motions. When did she have a chance to have a factual hearing on her I-751 motion? She needs to request one. Right at that hearing where the IJ had her plead to the NTA with an interpreter and then asked for what applications, if any, she would be filing. That's when she says, I would like a review of the I-751. It would be set over for an individual hearing, and she could present all the evidence and testimony that she could gather to support her case at that hearing. The master calendars, at least before COVID, were crowded mass calendar events where you would have 30 or 40 non-citizens appearing at the same time. That's not a good avenue to get into factual issues. And so the IJ would have set it over for an individual hearing just for petitioner, had petitioner requested that. I thought she did say, I want a hearing on my I-751 petition. I thought that was in the record. She said, I want a hearing. And wasn't it coming up on the IJ at that point to set it? Had she said that, yes. But what she did was deny the allegation in the notice to appear and deny the charge of removability. And the denying the allegation means that she's disputing DHS's that citizenship and immigration services denied the I-751 on this particular date. And so to sustain that allegation, all DHS has to do is point to the paper that says, nope, we did, just as we said in the NTA, we did, in fact, deny this on the state. And that's what the IJ did at the hearing when she looked and said, okay, the paper's there. And that renders petitioner The I-751 review is a defense to removal. So that's separate than simply denying removability. Denying removability on its own is not sufficient for the I-751 hearing. You have to request review. Sometimes non-citizens don't want a review of the I-751. Once they're in proceedings, they choose to do something else. What did she say at the hearing about I-751 review? Didn't she say something? I don't believe so. They acknowledged that that was the type of case it had been before the agency. And they discussed the termination of her conditional LPR status as it related to the allegation in the notice to appear that it had been denied on such and such a date. But she never requested review of that. And not everyone who's I-751 is denied wants review of that. That's why you have to request it. The agency can't assume that you want that because that's not always going to be right. Sometimes people prefer to go with a cancellation claim, which she later developed or tried to develop on appeal, or asylum, VAWA. There are other things that sometimes people would prefer to apply for. And so that's why the petitioner who was represented at all times and has never claimed her attorneys were ineffective. She has the duty to speak up and say what she wants or try to get more time and hear the more time was what was unsuccessful. Let's assume we disagree with you on that point, and that she was not required to affirmatively request a hearing on the I-751. So, so she didn't get the hearing she was entitled to does does that mean she wins? Or is there any alternative way of denying the petition here? In order to show that the continuance denial, yes, she needs to show substantial prejudice as the board ruled and before this court, petitioner has not meaningfully challenged that in her briefs, she does not reference the board's treatment of her medical records or its treatment of her cancellation of removal application in her brief. And she could have shown prejudice by bringing things like an affidavit related to the bona fides of the marriage, which is not in the record. There are affidavits from petitioner, but she discusses her medical difficulties or that she has a car but still finds it difficult to get around. She explains why it might be difficult to coordinate with counsel, but she never explains the details of her marriage, how she met her husband, where they met, how long they dated any of those details. So the way to show prejudice would be to put forth the evidence of the good nature of the marriage, which is not in the record. So the statements of counsel before the court today are not evidence and should not be treated as such. Counsel opposite seems to be making the argument that the evidence with respect to her hardships caring for her mother, etc, would be an independent basis for showing substantial prejudice. Do you agree with that? It would be but they're not in the record. She mentions in an affidavit that she has an elderly mother that she lives with and cares for. But that's all that's there. It's two or three lines. We don't have any independent evidence that the mother exists or has that relationship to her or has the citizenship status. She says that she does really basic biographical facts like that, which are critical to sustaining her burden of demonstrating that the outcome of the case would have been different had the continuance been granted, and she has not done that. And in her opening brief, she does not raise a meaningful challenge to that determination. Thank you. If the court has no more questions. Council. I'm Miss Kennedy. Yes, Judge. Am I on mute? Or am I off of mute? Okay. Thank you. Okay. Right. Um, you know, at the point that I am presenting the case to the Fifth Circuit, I am combined as to the record on appeal, but the government really kind of hit the nail on the head, you know, or the issue here is, do we need to request an I 751 review that was done? I mean, again, once that charge is denied the charge that says the conditional residence was the immigration judge is on notice. And again, that eight USC 1229 a B one places that affirmative duty on the immigration judge to examine the evidence, as the government said herself, as government counsel said, a master calendar hearing is not the place to do this. You don't need a continuance. This case really isn't about a continuance. It just needed to be set for a hearing on the merits, where all of the evidence could have been attached. It would not have been appropriate to put additional evidence into the record at the Fifth Circuit level. Instead, it would have needed to have gone to the Board of Immigration Appeals. And at the time, weren't you required to do that in your reopening motion to show that you have some substantial basis and that you're likely to Isn't that a burden? The answer is, it depends, Your Honor. So what what was filed, and this is where, honestly, I would argue that, first of all, exhaustion of administrative revenues isn't required, because this is a constitutional issue. But even if it was, it absolutely was met. There was a motion to reopen that was filed to the immigration judge. And this is in the record on appeal here before this court, there was a motion when no when no evidence when no action was taken on that there was a motion that was filed to the Board of Immigration Appeals that was both a motion to reopen and a motion specifically requesting remand for an evidentiary hearing for a hearing on the application for the 42 B. It did contain as government counsel concedes, it contained an explanation that she had an 88 year old mother who would show substantial hardship. Immigration law basically says that an affidavit and testimony alone can carry the day. And so once a prima facie showing is made, that she had a bona fide application, that there was no lack of diligence and not presenting it. But at worst, a good faith misunderstanding as to what was actually required on that day. So in response to a number of our questions about evidence, you're pointing to evidence that's been attached to a motion to reopen or to remand?  All right. So we can look at that on the record. Yes, sir. And this is a de novo appeal. So you know, so so we can look at that evidence and make a determination about whether there was a substantial prejudice showing. Right? Yes. Although, Judge, I would argue a de facto substantial presence. I understand that. So I just want to get to where it is in the record. And so we can look at it. I would like to address the prospect that there wasn't sufficient challenge made in the brief. You know, this brief very clearly argues to the court that what's at issue here is a denial of due process. I mean, I, or, you know, Ms. Quinn is, once we are at the de novo standard, this court can look at any legal, you know, analysis or any any point of law that it wants to in this case, but the BIA mistakenly applied, you know, they applied the wrong legal standards. And this really wasn't isn't an issue of whether a continuance is warranted, because again, there was no, no need or necessity for an additional master calendar hearing, all that needed to happen was the immigration judge needed to do what federal law charges her to do, and set the case for a substantive hearing on the merits. And so that's not really an issue of a continuance. It's a question of whether due process was accorded to Ms. Quinn. And of course, we contend it was not. And I think one thing too, that I would ask this panel to consider is that there's no prejudice to the government in this case. I mean, had there been an evidentiary hearing that would have been set the only thing that would have happened is that the alien would have enjoyed her rights to due process that she's entitled to. I also believe that it's really parsing much too fine a hair to say, oh, you didn't use the magic words of we want an I 751. You know, we want an I 751 review instead. And in fact, I believe the Supreme Court kind of recently looked at this in the Kaiser v. Wilkie case. And that citation is 139, Supreme Court 2400, where the court said that you don't give agency definition, you don't give agency deference if the regulations are clear. So here, we have a clear duty for the immigration judge to have a factual examination and a clear right for the alien to have that factual examination. And once that did not occur, then you have a fundamental error, a lack of due process, and she ought to be entitled to remand to have her day in court. Thank you. Thank you, counsel, we have your argument. That will conclude the arguments in front of our panel today. We will recess until nine o'clock in the morning. Thank you.